# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**IRENE SARAH YALCH,**

    **Plaintiff,**

**v.**                                                                                                                     No. 19-cv-0076 SMV

**ANDREW SAUL,**[1]
**Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand for a Rehearing with Supporting Memorandum [Doc. 17] ("Motion"), filed on May 31, 2019. The Commissioner responded on August 28, 2019. [Doc. 21]. Plaintiff replied on September 29, 2019. [Doc. 24]. The parties have consented to my entering final judgment in this case. [Doc. 10]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to show reversible error in the Administrative Law Judge's evaluation of certain source opinions. The Motion will be denied, and the Commissioner's final decision, affirmed.

---

[1] Andrew Saul is the current Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481 (2012). This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

**<u>Applicable Law and Sequential Evaluation Process</u>**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on September 11, 2012. Tr. 12. She alleged a disability-onset date of February 15, 2012. Tr. 686. Her claims were denied by an ALJ but remanded once by this Court. Tr. 12–25, 826–40; *Yalch v. Berryhill*, No. 16-cv-1167 LF (D.N.M. May 9, 2018). ALJ Ann Farris consolidated the claims with a new set of claims Plaintiff had filed when she appealed to federal court the first time. The ALJ held a second administrative hearing on September 27, 2018, in Albuquerque, New Mexico. Tr. 686. Plaintiff appeared in person at the hearing with her attorney. Tr. 686, 709–43. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Karen N. Provine. Tr. 686, 712, 738–42.

The ALJ issued her most recent unfavorable decision on November 21, 2018. Tr. 700. She found that Plaintiff met the insured status requirements of the Social Security Act through June 13, 2016. Tr. 688. At step one, she found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative joint disease of the knees, fibromyalgia, obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder." Tr. 689. The ALJ also found that Plaintiff's chronic low back pain, plantar fasciitis, history of kidney stones, endometriosis, fatty liver, and migraine headaches were not severe. *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 690–92. Because none of Plaintiff's

4

impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 692–98. The ALJ found that Plaintiff had:

> the [RFC] to perform less than a full range of sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a). She must be allowed to between alternate sitting and standing for brief periods approximately hourly; can frequently (but not constantly) handle and finger; must avoid hazards, such as unprotected heights and dangerous moving machinery; can occasionally climb stairs but never ladders or scaffolds; can occasionally balance and stoop; cannot kneel, crouch, or crawl; and cannot interact with the public.

Tr. 692.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a nursery school attendant or cashier checker. Tr. 698. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 699–700. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff filed the instant action on January 28, 2019. [Doc. 1].

## **Analysis**

Plaintiff argues that the ALJ's decision should be reversed and the case remanded for errors in weighing the opinions of Dr. Baum, CNP Corns, and NP Robbins. The Court is not persuaded. Plaintiff fails to show reversible error, and the ALJ's decision will be affirmed.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.527(e)(2)(ii), 416.927(e)(2)(ii) (2012)[4]). That is, when

---
[4] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

5

assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.527(c), 416.927(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. SSR 06-03p,[5] 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to

---

[5] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.

provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[6] 1996 SSR LEXIS 2, at *13, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

### A. Opinion of Consultative Examiner, Steven K. Baum, Ph.D.

Plaintiff challenges the ALJ's evaluation of Dr. Baum's examining opinion, [Doc. 17] at 14–18, but her arguments are not persuasive. The ALJ rejected Dr. Baum's opinion for several reasons. She explained that Dr. Baum examined Plaintiff only once and "thus did not have a longitudinal picture of her mental functioning and did not form a treatment relationship." Tr. 697. She found that his opinion was not supported by the earlier evidence, which she said, Dr. Baum himself acknowledged, nor was it supported by the evidence "currently of record." *Id.* For example, "findings on mental status examinations have routinely been unremarkable and the claimant has not sought mental health treatment on a regular basis." *Id.* Finally, the ALJ explained that Dr. Baum's opinion (that Plaintiff was moderately limited in her ability to understand and remember very short and simple instructions and markedly limited in the ability to understand and remember detailed instructions) was undermined by Plaintiff's history of semiskilled work and CNP Corns' report of "no cognitive changes and no evidence of problems in reality contact on mental status examinations." *Id.*

---

[6] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

Plaintiff challenges this evaluation of Dr. Baum's opinion. She argues that the ALJ's reasons for rejecting his opinion are inadequate. [Doc. 17] at 14. First, she argues that the fact that Dr. Baum saw Plaintiff only once is "immaterial." *Id.* at 15 (citing *Chapo*, 682 F. 3d at 1291). To the extent that Plaintiff argues that an ALJ may not reject a consultative opinion solely because it resulted from a one-time examination, she is correct. Nevertheless, it is entirely appropriate for an ALJ to consider the "length of the treatment relationship and the frequency of examination." *See Watkins*, 350 F.3d at 1301; 20 C.F.R. §§ 404.527(c), 416.927(c). There is no error in the ALJ's considering—along with other factors—that Dr. Baum was a one-time examiner.

Relatedly, Plaintiff argues that the ALJ failed to explain why she found the opinions of the non-examiners "more consistent with the evidence as a whole" than Dr. Baum's opinion. [Doc. 17] at 15–16 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.")). The Court is not persuaded that the ALJ erred. True, the ALJ found the non-examining opinions to be more consistent with the evidence than Dr. Baum's opinion. Tr. 696, 697. But, ultimately, she did not accord the non-examining opinions more weight than Dr. Baum's opinion. Tr. 696, 697. If she had, then an adequate explanation would have been required. *See Robinson*, 366 F.3d at 1084. The non-examiners opined that Plaintiff's mental impairments were not severe, i.e., that they did not significantly affect her ability to work. Tr. 95–96, 109–10 (Dr. Bridges); Tr. 778–79, 792–93 (Dr. Logan); Tr. 806–07, 819–20 (Dr. Atkins). One even found that she had no medically determinable mental impairment at all. Tr. 74, 83. The ALJ did not adopt the non-examiners' view of Plaintiff's functional capacity. Rather, the ALJ found

that Plaintiff's mental impairments were "at least severe," i.e., that they significantly affected her ability to work. Tr. 697. And she included a corresponding limitation in the RFC (no interaction with the public). Tr. 692, 698. Under these circumstances, Plaintiff fails to show error.

Acknowledging that the ALJ did not *adopt* the non-examining opinions over an examining opinion, Plaintiff complains that the ALJ rejected all the opinions. [Doc. 17] at 16 n.21. She argues that the ALJ impermissibly "played doctor" in formulating the RFC assessment. *Id.* She argues that in rejecting all the source opinions, a subsequent reviewer cannot identify on what evidence the ALJ relied in formulating the RFC assessment. *Id.* The Court does not agree.

The ALJ summarized the evidence on which she relied in formulating the mental restriction in the RFC assessment, providing several specific citations to the record. Tr. 694–95. She explained:

> With regard to [Plaintiff]'s allegations of anxiety and depression, the medical records show that over the years, findings on mental status examinations have generally been unremarkable and [Plaintiff] has not sought mental health treatment on a regular basis. She did see CNP Corns during 2013 and 2014, primarily for anxiety related to [Plaintiff]'s concern that her ex would attempt to harm her or obtain custody of their daughter when he was released from prison in three years (Exhibit l0F). CNP Corns reported [Plaintiff]'s mood was depressed and affect blunted (Exhibit l0F/14). However, other providers routinely reported her presentation was unremarkable on mental status examination. In particular, NP Robbins, who was seeing [Plaintiff] during the same period, consistently reported normal mental status examination (Exhibit 13F/10).
>
> [Plaintiff] has taken medication for anxiety and depression intermittently[] but has reported improvement when taken as prescribed. In October 2014, [Plaintiff] reported depression and anxiety were better on trazodone and Effexor (Exhibit l 7F/98). In November 2016, [Plaintiff] told her primary care provider that Effexor had helped depression, but that she had stopped taking it (Exhibit l 7F/8). Her physician restarted Effexor[] and added

> clonazepam at night for PTSD, in addition to medical cannabis. From March 2015 to April 2017, [Plaintiff] saw a counselor on approximately five occasions for complaints of anxiety and depression (Exhibit 19F). She was discharged due to lack of follow up on July 5, 2017 (Exhibit 23F). Overall, [Plaintiff] has not sought mental health treatment consistently, and her mental presentation has most often been completely unremarkable. She has not required inpatient treatment for any mental problems. However, I have taken her mental impairments and hearing testimony into consideration in finding that she cannot perform work requiring her to interact with the public.

Tr. 694–95. At the conclusion of the summary, the ALJ explained, "I have taken [Plaintiff's] mental impairments and hearing testimony into consideration in finding that she cannot perform work requiring her to interact with the public." Tr. 695. Plaintiff makes no clear challenge to these findings. *See* [Doc. 17].

Plaintiff challenges the ALJ's rejection of Dr. Baum's opinion based on inconsistency with the record. *Id.* at 16. Her complaint appears to be that the ALJ failed to provide citations to the record evidencing inconsistency.[7] *See* [Doc. 24] at 1; [Doc. 17] at 16. Plaintiff, however, fails to show that the ALJ was required to cite to the portions of the record that supported her finding. It is helpful when ALJs cite to the record, but the Court is aware of no rule that obliges them to do so. More to the point, the standard of review is whether the ALJ applied the correct legal standards and whether her decision was supported by substantial evidence. Before this Court, Plaintiff bears the burden of showing either error. Plaintiff does not meet that burden by merely arguing that the

---

[7] Plaintiff also argues that it is not accurate to characterize an examining opinion as inconsistent with the record, when it is inconsistent with only the non-examining opinions. [Doc. 24] at 2 (citing *Pedroza v. Berryhill*, No. 16-cv-0949 SMV, [Doc. 30] at 13 (D.N.M. Sept. 25, 2017) (unpublished)). The Court agrees on that point. However, here, the ALJ found Dr. Baum's examining opinion as inconsistent with the record due to other circumstances, as discussed herein.

10

ALJ did not cite to the record (without showing that the ALJ was so required). The ALJ found that Dr. Baum's opinion was inconsistent with the "mental status exams[,which were] routinely . . . unremarkable." Tr. 697. Critically, Plaintiff does not dispute that her mental status exams were routinely unremarkable, much less does she show that the finding is not supported by substantial evidence. *See* [Doc. 17]. Remand is not warranted on this ground.

The ALJ found Dr. Baum's opinion to be inconsistent with Plaintiff's failure to the seek mental health treatment on a regular basis. Tr. 697. Plaintiff argues that lack of treatment should not carry much weight, or if it does, the ALJ should first consider why the plaintiff has not sought treatment. [Doc. 17] at 16–17 (citing *Shultz v. Berryhill*, No. 16-cv-0080 LF, [Doc. 30] at 17 (D.N.M. Sep. 28, 2017) (unpublished) (citing SSR 96-7p, 1996 WL 374186, at *7)). Plaintiff testified at the hearing that she was waiting to return to counseling until her doctor could find a female counselor to see consistently. Tr. 719. The ALJ explicitly referenced this testimony. Tr. 692. Thus, the ALJ did consider the reason that Plaintiff was not seeking treatment on a regular basis, at least not recently. What is more, lack of consistent mental health treatment is only one of several reasons provided by the ALJ. Plaintiff fails to show any error in the ALJ's reliance on this ground.

Finally, Plaintiff argues that the ALJ never explained how Plaintiff's past semi-skilled work undermined Dr. Baum's assessment of Plaintiff's ability to understand and remember.[8] This Court, however, needs no further explanation to follow the ALJ's reasoning. Semi-skilled work requires understanding, remembering, and carrying out detailed instructions. POMS

---

[8] Dr. Baum assessed Plaintiff as moderately limited in her ability to understand and remember very short and simple instructions and markedly limited in the ability to understand and remember detailed instructions. Tr. 1936.

11

§ DI 25020.010(B)(4). Dr. Baum opined that Plaintiff would be markedly limited in the ability to understand and remember detailed instructions (and moderately limited in her ability to understand and remember very short and simple instructions). Tr. 1936. In other words, Dr. Baum believed that Plaintiff could not perform semi-skilled work. Undermining his opinion is the fact that Plaintiff has performed semi-skilled work, recently enough and for a sufficiently long time period to qualify as "past relevant work."[9] Plaintiff fails to show any error in the ALJ's reliance on this ground.

Lastly Plaintiff addresses the ALJ's reliance on CNP Corns' notes to find that Dr. Baum's opinion is inconsistent with the record. [Doc. 17] at 16–18. Plaintiff does not dispute that the notes cited by the ALJ are, in fact, inconsistent with Dr. Baum's opinion. *See* [Doc. 17] at 16–18. Rather, she argues that the ALJ ignored the notes that were consistent with Dr. Baum's opinion. *Id.* at 16, 17–18 (citing Tr. 1259–60, 1262–63, 1286–87, 1295-96). The notes to which Plaintiff cites show that Plaintiff struggled emotionally, e.g., depressed mood, ruminative thought process, with a regression in progress, Tr. 1259–60, worsening anxiety, racing thoughts, blunted affect, and an increase in medication, Tr. 1262–63, poor sleep, difficulty getting out of bed, anxious mood, and addition of medication, Tr. 1286–87, flashbacks, nightmares, low self-worth, and depressed mood, Tr. 1296. The Court agrees with Plaintiff that these notes could support Dr. Baum's opinion on Plaintiff's functional limitations. But they also could support different functional limitations, like the ALJ's limitation to no contact with the public. The fact that the evidence could support an outcome more favorable to Plaintiff is not enough for remand. Even if Plaintiff were correct

---

[9] Plaintiff does not dispute the ALJ's characterization of her past work (as a nursery school attendant and cashier checker) as semi-skilled. *See* [Doc. 17].

that certain of CNP Corns' records were consistent with Dr. Baum's opinion, this Court may not reweigh the evidence.

### B. Treating Opinion of Jeanne Corns, CNP

The ALJ rejected CNP Corns' opinion because she found that it relied heavily on Plaintiff's subjective reports of symptoms and limitations, and the totality of the evidence did not support it. For example, CNP Corns explained that the marked limitation in attention and concentration was because Plaintiff felt "zoned out" and "c[ould]n't think," which as the ALJ saw it, was clearly based on Plaintiff's subjective report. Tr. 697 (quoting Tr. 659). The ALJ found that CNP Corns' opinion was inconsistent with her own treatment notes. To support her finding, the ALJ noted that in September 2014, CNP Corns reported that Plaintiff's presentation on mental status examination was completely normal. Tr. 697 (citing Tr. 1187). In particular, Plaintiff's mood was euthymic, affect was normal, recent and remote memory were intact. *Id.* Plaintiff was attentive, and intelligence appeared average. *Id.* The ALJ determined that these notes did not support CNP Corns' opinion as to Plaintiff's functional limitations.

Plaintiff argues that the ALJ erred in weighing and rejecting CNP Corns' opinion. Her challenges fall into three categories. First, she complains that the ALJ erred in rejecting the opinion for having been based on Plaintiff's subjective complaints. Plaintiff argues that CNP Corns was permitted to rely on Plaintiff's subjective complaints and that it is not proper to reject an opinion for that reason. [Doc. 17] at 21. Plaintiff argues that the ALJ must have a legal or evidentiary basis for finding that the source opinion was based on a plaintiff's subjective complaints. *Id.* at 21–22. But the ALJ explained the evidentiary basis for her determination: CNP Corns noted in the comments section of her report that Plaintiff "[f]eels zoned out, can't think." Tr. 697 (quoting

13

Tr. 659). The ALJ understood those words "clearly" to be Plaintiff's own description, which CNP Corns was merely repeating. *Id.* Plaintiff does not challenge the ALJ's characterization of CNP Corns' comments. Plaintiff fails to show any error.

Second, Plaintiff challenges the ALJ's finding that CNP Corns' opinion was not supported by a totality of the evidence. [Doc. 17] at 22. Plaintiff argues that the ALJ failed to cite evidence contradictory to CNP Corns' opinion. [Doc. 17] at 22. Further, Plaintiff argues that CNP Corns' opinion is consistent with Dr. Baum's opinion (which is the only other opinion from a provider who actually saw and examined Plaintiff) and NP Robbins' opinion. *Id.* Plaintiff fails to show reversible error for two reasons. One, she fails to cite any authority (and the Court is aware of none) requiring the ALJ to cite to the contradictory evidence in the record. The standard of review is whether the ALJ's findings are supported by substantial evidence. Although it is helpful when the ALJ identifies the evidentiary support, Plaintiff fails to show that the ALJ's failure to provide citations triggers remand. Two, Plaintiff's citations to other source opinions that she believes *are* consistent with CNP Corns' opinion do not trigger remand either. Plaintiff, as the movant before this Court, bears the burden of showing that the ALJ's finding (that CNP Corns' opinion was not supported by a totality of the evidence) is not supported by substantial evidence. That burden is not met by citing evidence that could support a more favorable outcome.

Lastly, Plaintiff challenges the ALJ's finding that CNP Corns' own notes are inconsistent with her opinion. *Id.* at 22–23. The ALJ cited one of CNP Corns' notes in support of her finding, and Plaintiff argues that one note is not sufficient. *Id.* at 22. Plaintiff then cites to other notes by CNP Corns that she believes are clearly consistent with CNP Corns' opinion. *Id.* (citations omitted). Defendant does not appear to dispute the point. *See* [Doc. 21] at 14–15. Defendant

argues that lack of support in the provider's own notes is a legitimate basis for discounting a source opinion. *Id.* at 14. But Plaintiff does not argue otherwise. *See* [Doc. 17] at 21–23. Defendant makes no effort to dispute Plaintiff's point, which is that there is not substantial evidence to support the ALJ's finding that CNP's Corns own notes are "inconsistent" with her ultimate opinion. *See id.* at 14–15. On review of CNP Corns' own notes, Tr. 1293–96, 1286–87, 1281–82, 1274–75, 1266–68, 1262–63, 1258–60, 1223–25, 1186–87, and considering that Defendant offers no argument to the contrary, the Court is inclined to find that whatever support there may be in the record to underpin the ALJ's finding (that CNP Corns' notes are not consistent with her opinion) is overwhelmed by the evidence showing that CNP Corns' notes are consistent with her opinion. Nevertheless, even omitting this one rationale from the calculus, the Court would still find that Plaintiff fails to show that remand is warranted. The other reasons provided by the ALJ to rejecting CNP Corns' opinion are adequate to affirm the ALJ's decision.

### C. Treating Opinion of Melanie Robbins, NP

Plaintiff argues that the ALJ erred in weighing and rejecting NP Robbins' opinion. [Doc. 17] at 18. Even if the ALJ erred in rejecting NP Robbins' opinion, it is not obvious that Plaintiff suffered any prejudice, because the RFC assessed by the ALJ appears to be consistent with NP Robbins' opinion. *Compare* Tr. 692 (ALJ's RFC assessment), *with* Tr. 657 (NP Robbins' opinion). The only potential discrepancy appears to be that NP Robbins limited Plaintiff to lifting/carrying "less than" ten pounds, Tr. 657, whereas the ALJ limited Plaintiff to sedentary work, Tr. 692, which includes lifting and carrying "no more than" ten pounds, 20 C.F.R. §§ 404.1567(a), 419.967(a). In other words, the only apparent discrepancy appears to be whether Plaintiff can occasionally lift ten pounds or nine. The Court is not convinced that this discrepancy

(such as it is) would have prejudiced Plaintiff even if it had resulted from an error by the ALJ. Remand is not warranted on that ground.

## **Conclusion**

Plaintiff fails to show reversible error in the ALJ's weighing of the opinions of Dr. Baum, CNP Corns, and NP Robbins. The Motion will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse or Remand for a Rehearing with Supporting Memorandum [Doc. 17] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**